**DIAMOND ALKALI CO. v. DRISCOLL, Collector of Internal Revenue.**

No. 7741.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 9, 1941.

Reargued Dec. 19, 1941.

Decided Feb. 16, 1942.

Paul S. McMahon, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Gerald L. Wallace, Sp. Asst. to the Atty. Gen., Charles F. Uhl, U. S. Atty., and Elliott W. Finkel, Asst. U. S. Atty., both of Pittsburgh, Pa., on the brief), for appellant.

Joseph G. Robinson, of Pittsburgh, Pa. (W. A. Seifert and William Wallace Booth, both of Pittsburgh, Pa., and Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, MARIS, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

The plaintiff taxpayer in this case seeks to recover against the collector for a portion of its capital stock tax for the period ending June 30, 1935. The tax has been paid, with the appropriate steps to preserve its rights by the taxpayer. Now it sues to recover the portion which it claims was erroneously exacted. Its claim was sustained by the learned District Judge in an opinion reported in 37 F.Supp. 536. The collector appeals to this court.

The essential facts are few. The plaintiff, a Delaware corporation, filed its original declaration of capital stock value for the period ending June 30, 1934. In its return for the next year the taxpayer declared upon an adjusted valuation of capital stock by which the capital was reduced. The claimed reduction is the basis for this litigation. Previous to 1934 the corporation had purchased some of its outstanding shares; these were carried as treasury stock. In 1934 additional shares were purchased. All of the latter and some of the shares previously bought were retired in 1934. The taxpayer claims that the cost or other basis of all the stock thus retired may be deducted in determining the adjustment of its capital stock valuation. The collector's position is that only those purchased and retired in 1934 may be considered.

The statute in question is Section 701(f) of the Revenue Act of 1934.[1] The controversy here turns upon clause (A) which permits adjustment of the capital stock value originally declared by deducting "the value of property distributed in liquidation to shareholders". Other statutory references are relevant. Section 701 provides that adjustment for the year shall be computed according to the income-tax law applicable to such year. The income-tax law applicable here is the Revenue Act of 1934, which provides, in section 115(c), 26 U.S. C.A. Int.Rev.Acts, pages 703, 704, that: " * * * amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock * * *". Subdivision (i) of the same section defines "amounts distributed in partial liquidation" as "a distribution by a corporation in complete cancellation or redemption of a part of its stock * * *".

■ It is clear from the language in the statutory definition that a distribution in partial liquidation involves two things. One is a distribution to the shareholders; the other is the cancellation or redemption of stock. Thus when a corporation distributes part of its surplus to its shareholders without retiring any of its stock, this is not a distribution in liquidation for our purposes, even though the value of each share is reduced by reason of this distribution. Arthur Iron Mining Co. v. Landy, 8 Cir., 1939, 103 F.2d 164; Beattie Inv. Co. v. United States, 8 Cir., 1939, 101 F.2d 850; Koppers Co. v. Driscoll, D.C.W.D.Pa. 1941, 40 F.Supp. 57. So, also, if the corporation buys some of its own shares and holds them as treasury stock that is not a distribution in liquidation.[2] See Amelia H. Cohen Trust v. Commissioner of Internal Revenue, 3 Cir., 1941, 121 F.2d 689, and authorities cited. Indeed such a dealing in its own shares may, under some circumstances, constitute taxable gain or loss. Commissioner of Internal Revenue v. S. A. Woods Mach Co., 1 Cir., 1932, 57 F.2d 635.

■ When the plaintiff corporation acquired the shares of its own stock prior to 1934 it made a distribution in fact to the extent of the consideration paid to those from whom the shares were acquired. But this distribution became a distribution in partial liquidation when the shares were retired. The effective date was February 13, 1934 when the certificate pursuant to the Delaware statute was filed with the Secretary of the State of Delaware.[3] Between the purchase of its shares by the corporation and that which completed a distribution in partial liquidation, comes the original declaration of the taxpayer of its capital stock. This declaration, by the terms of the act, speaks as of the close of the last income tax year.

The language of § 701(f), already quoted, dealing with "adjusted declared value" for each income tax year refers it to the period "from the date as of which the original declared value was declared to the close of its last income-tax taxable year ending at or prior to the close of the year for which the tax is imposed by this section".

This language seems to confine the time for the effectiveness of the distribution in partial liquidation to the calendar year 1934 in this case. The distribution in fact as to

---

[1] "(f) For the first year ending June 30 in respect of which a tax is imposed by this section upon any corporation, the adjusted declared value shall be the value, as declared by the corporation in its first return under this section (which declaration of value cannot be amended), as of the close of its last income-tax taxable year ending at or prior to the close of the year for which the tax is imposed by this section * * *. For any subsequent year ending June 30, the adjusted declared value in the case of a domestic corporation shall be the original declared value plus * * *, and minus (A) the value of property distributed in liquidation to shareholders * * *; adjustment being made for each income-tax taxable year included in the period from the date as of which the original declared value was declared to the close of its last income-tax taxable year ending at or prior to the close of the year for which the tax is imposed by this section. The amount of such adjustment for each such year shall be computed * * * according to the income tax law applicable to such year. * * *" 26 U.S.C.A. Int.Rev.Acts pages 788, 789.

[2] It is assumed in this discussion, of course, that the corporation may legally buy its own shares. The taxpayer in question is a Delaware corporation and such purchase is permitted under the law of Delaware. Revised Code of Delaware, 1935, Chap. 65, Section 2051.

[3] In December 1934 additional shares were retired by change in capital structure and amendment of certificate of incorporation. No additional legal question is presented by this fact.

the stock acquired earlier, had taken place prior to 1934. In 1934 occurred the events which made it final. The shares were retired and could not be resold. But that fact does not, we think, entitle us to treat the whole transaction as one in 1934 when the buying of the shares, the operation which factually reduced the capital investment in the taxpayer's business had occurred before that year.

The taxpayer had one opportunity to determine the effect of the earlier stock acquisitions when it made its original capital stock return. The stock was then in its treasury. To allow what is asked for here would be to permit it to change its mind about the treatment, for capital stock purposes, of what it had already acquired. We think it may not do so.

There are no judicial precedents in point. The Collector buttresses his argument by reference to an opinion by the Assistant General Counsel for the Bureau of Internal Revenue.[4] If the language therein indicates that there might be a distribution in partial liquidation during one year by retirement of stock bought in a previous year in accordance with a plan for purchase and retirement, we do not pass upon it. In the case at bar there was no such plan shown. Nor does the Collector insist that there must be where purchase and retirement occur in the same year. We confine ourselves to the facts of the immediate case. Upon them we think the taxpayer was not entitled to deduct from its 1934 declared value the cost of the shares acquired in the previous years.

The judgment of the District Court is reversed.

---

[4] G.C.M. 15055, XIV-2 C.B. 410 (1935). This memorandum on "adjusted declared value" discusses the situation where the corporation acquires its own capital stock, and holds, retires or otherwise disposes of it. It points out first that the mere purchase of outstanding stock by the corporation does not affect its capital structure. Then with regard to the acquisition by a corporation of its stock, not for resale, but for retirement, it points out that there must be both the purchase of stock and its retirement to complete the transaction. The concluding words of the paragraph related to this case are: "The retirement completes the liquidation, but if it was an afterthought it cannot be related back to the purchase so as to warrant the conclusion that there was any distribution in liquidation within the meaning of subdivision (A)."

In stating the general rules to govern the determination of adjustment in this case it is stated: "(c), where the purchase and retirement of the shares of stock occur in one income-tax taxable year the adjustment authorized by subdivision (A) must be made in the capital stock return for the subsequent year ending June 30."

It is to be noted that this specific rule relates to time when the adjustment must be claimed, not the time when the purchase of the shares was made.