## STANDARD STOKER CO., Inc., v. UNITED STATES.

No. 46365.

Court of Claims.

Oct. 1, 1945.

Jesse Bay Robinson, of New York City (Robert E. Coulson, James K. Polk, and Whitman, Ransom, Coulson & Goetz, all of New York City, on the brief), for plaintiff.

John A. Rees, of Washington, D.C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHITAKER, Judge.

This case is before us on demurrer.

Plaintiff alleges that on and prior to January 1, 1936, and until November 30, 1936, it was the owner of all of the capital stock of a corporation of the same name as its own. On November 30, 1936, the former corporation completely liquidated, transferring all of its assets to plaintiff, who assumed its liabilities, and completely cancelling its capital stock. The former corporation will hereafter be referred to as the "liquidated corporation."

On July 29, 1937, the liquidated corporation filed a capital stock tax return which showed no capital stock tax due. Subsequently the Commissioner of Internal Revenue assessed against plaintiff, as transferee, a capital stock tax of $4,301.00, plus interest in the amount of $365.28. This was duly paid and claim for refund therefor was filed.

Plaintiff's liability for any part of the tax is the issue presented. Its liability depends upon the proper construction of section 105 of the Revenue Act of 1935, c. 829, 49 Stat. 1014, 1017, 1018, 26 U.S.C.A. Int.Rev. Acts, page 796, which provides in part:

"(a) For each year ending June 30, beginning with the year ending June 30, 1936, there is hereby imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1.40 for each $1,000 of the adjusted declared value of its capital stock.

*     *     *     *     *     *

"(f) For the first year ending June 30 in respect of which a tax is imposed by this section upon any corporation, the adjusted declared value shall be the value, as declared by the corporation in its first return under this section (which declaration of value cannot be amended), as of the close of its last income-tax taxable year ending at or prior to the close of the year for which the tax is imposed by this section * * *. For any subsequent year ending June 30, the adjusted declared value in the case of a domestic corporation shall be the original declared value plus (1) the cash and fair market value of property paid in for stock or shares, (2) paid in surplus and contributions to capital, (3) its net income, (4) the excess of its income wholly exempt from the taxes imposed by Title I of the Revenue Act of 1934, as amended, over the amount disallowed as a deduction by section 24(a) (5) of such title, and (5) the amount of the dividend deduction allowable for income tax purposes, and minus (A) *the value of property distributed in liquidation to shareholders*, (B) distributions of earnings or profits, and (C) the excess of the deductions allowable for income tax purposes over its gross income * * *." [Italics ours.]

Plaintiff's position is that, since the liquidated corporation distributed all of its assets within the taxable year for which the tax was levied, of necessity the adjusted declared value of its stock is zero.

The capital stock tax and the excess profits tax are related taxes. The capital stock tax is based upon the declared value of plaintiff's capital stock. This declared value is one of the bases for the assessment of the excess profits tax. Under the Act a taxpayer was permitted to declare any value it pleased for its capital stock, since the lower the value declared, the greater would be the excess profits taxes, which would offset the saving in capital stock tax; on the other hand, the higher

the declared value of the capital stock, the greater would be the capital stock tax, but this would be offset by a decrease in the amount of the excess profits tax. A taxpayer had the election to declare any value it pleased, but this value could not be changed. Chicago Telephone Supply Co. v. United States, 35 F.Supp. 470, 92 Ct.Cl. 167.

Thereafter, the value of its stock for subsequent years referred to in the Act as "the adjusted declared value," was to be ascertained by the addition to the original declared value of certain things which increased that value, and by the deduction of certain things which decreased that value. The things to be added and the things to be deducted were set out in detail. Among the deductions was "the value of property distributed in liquidation to shareholders."

■ As has been held by this court and by the Third Circuit Court of Appeals, the "value" of property distributed in liquidation means the actual value of that property, ordinarily to be determined by fair market value. National Steel Corporation v. United States, 3 Cir., 133 F.2d 256; First National Pictures, Inc., v. United States, 32 F.Supp. 138, 91 Ct.Cl. 83.

■ It is impossible to conclude from a reading of the Act that Congress had in mind the deduction of a value of the property distributed based upon the original declared value of the capital stock. The Act provides for the addition to the original declared value of "the cash and *fair market value* of property paid in for stock or shares" (italics ours); secondly, it provides for the addition of "paid in surplus and contributions to capital"; thirdly, of "its net income." Clearly, in determining the value of the paid in surplus and contributions to capital, as well as the value of property paid in for stock or shares, Congress had in mind the fair market value. It could not have had in mind a value determined by reference to the original declared value of the capital stock. This is also true, necessarily, of the computation of its "net income." Likewise, Congress must have had in mind when it provided for the deduction of the value of the property "distributed in liquidation to shareholders" the same basis of valuation it had in mind when it spoke of "the cash and fair market value of property paid in for stock or shares," and when it spoke of "paid in sur-

plus and contributions to capital," and of "its net income."

[5] The fallacy in plaintiff's argument lies in the fact that the original declared value had no necessary relation to the actual value of its capital stock. Had it been necessary for the liquidated corporation to ascertain and declare the actual value of its capital stock, then, in the absence of error, the adjusted declared value should have been zero after the corporation had completely liquidated; but this result does not necessarily follow where the taxpayer is permitted to place on its capital stock in the beginning a value that is purely fictitious.

The valuation of the assets transferred on liquidation on the basis of their declared value, instead of their actual value, would be tantamount to changing the original declared value of the capital stock, and this is prohibited by the Act, as we have seen. At the time of the original declaration the assets behind the capital stock were given an inflated value by the liquidated corporation. Only by a deflation of this value can we arrive at zero by deducting the value of the assets transferred on liquidation.

■ The capital stock tax is levied with respect to carrying on or doing business. The liquidated corporation did business within the taxable year and, therefore, is liable to a tax. The amount of the tax is to be determined in the way laid down by the statute. The only deduction to which plaintiff is entitled for the amount of the property distributed in liquidation is that deduction provided for in the statute, which is "the value of the property" so distributed; and we are of opinion that the value referred to is the market value.

■ Plaintiff does not allege that the determination of the Commissioner of Internal Revenue of the fair market value of that property was erroneous. In the absence of such an allegation, it is clear that plaintiff's petition does not state a cause of action. This holding is in accord with the authorities cited.

It results that the demurrer must be sustained and plaintiff's petition must be dismissed. It is so ordered.

WHALEY, Chief Justice, and LITTLETON, Judge, concur.

MADDEN, and JONES, Judges, took no part in the decision of this case.